**REMAND/MADE JS-6**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA MOJICA,<br><br>             Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK N.A., et al.,<br><br>             Defendants. | No. CV 12-1608-GW(AGRx)<br><br>**RULING AND ORDER ON PLAINTIFF'S EX PARTE APPLICATION TO REMAND ACTION TO STATE COURT** |

***Veronica Mojica v. Wells Fargo Bank, N. A., First Amer. Trustee Servicing Solutions, LLC.***,
Case No. CV-12-1608, Ruling and Order on Plaintiff's Ex Parte Application to Remand Action to State Court.

### I. Background

This action was initially filed on February 7, 2012 in state court, where Plaintiff Veronica Mojica ("Plaintiff" or "Mojica") filed suit seeking a preliminary injunction to enjoin Defendant Wells Fargo Bank ("Defendant" or "Wells Fargo") from foreclosing on Mojica's home. *See* Docket No. 1, Exh. 1. The state court judge issued a temporary restraining order enjoining the sale, which had been scheduled to go forward on February 9, 2012, and set a preliminary injunction hearing for March 1, 2012. *See* Docket No. 9 at 5. On February 24, 2012, Wells Fargo removed the action to this Court on the basis of diversity jurisdiction. *Id.* Plaintiff Veronica Mojica filed a motion for a preliminary injunction, and to remand this matter to state court, arguing that this Court does not have subject matter jurisdiction over this action due to a lack of diversity, since Plaintiff argues that both she and Wells Fargo are California citizens. Docket No. 9. This Court issued a minute order (Docket No. 10) instructing Defendant to respond to solely the jurisdictional issues raised in Plaintiff's Ex Parte Application to Remand Action to State Court, with which Defendant duly complied. *See* Docket No. 11. Wells Fargo agreed to delay the foreclosure proceedings until March 22, 2012, at the earliest, pending resolution of this matter.

### II. Analysis

"The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999), *overruled on other grounds by Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006). If there is any doubt as to the right of removal in the first instance, "federal jurisdiction must be rejected." *Duncan v. Struetzle*, 76 F.2d 1480, 1485 (9th Cir. 1996) (internal quotation marks omitted); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Wells Fargo asserts that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a), the diversity statute, meaning that each defendant must be a citizen of a different state than the plaintiff. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). Plaintiff Mojica, a citizen of California, asserts that there is not complete diversity between the parties because Wells Fargo should be considered a citizen of California on account of the fact that its principal place of business is in California, notwithstanding that its main office is located in South Dakota. Docket No. 9 at 7.[1]

Under 28 U.S.C. § 1348 ("Section 1348"), national banking associations are "deemed citizens of the States in which they are respectively located." The United States Supreme Court

---

[1] Since Wells Fargo does not dispute the contention that its principal place of business is in California, the Court deems the parties to be in agreement as to that point. Similarly, neither party disputes that Defendant is a national banking association. *See* Docket Nos. 9, 11.

has interpreted Section 1348 to mean that a national banking association, for purposes of diversity jurisdiction, is a citizen of the state where its articles of association designate the location of its main office. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 313-14 (2006). Importantly, *Schmidt* did not directly address whether a national bank could *also* be a citizen of the state of its principal place of business. *See id.* at 315 nn. 8-9.

Since *Schmidt*, courts have split on this issue, such that there is ample caselaw in the California District Courts interpreting *Schmidt* to leave open the possibility that a national banking association's principal place of business could also give rise to citizenship for diversity purposes, while many other cases have held that a national banking association is a citizen solely of the state of its home office. *Compare Goodman v. Wells Fargo Bank, NA*, No. CV 11–2685 JFW, 2011 U.S. Dist. LEXIS 63165 at *6 (C.D. Cal. June 1, 2011) (remanding after concluding that Wells Fargo was a citizen of California, where it has its principal place of business); *Saberi v. Wells Fargo Home Mortg.*, No. 10CV 1985 DMS, 2011 U.S. Dist. LEXIS 5286 at *3 (S.D. Cal. Jan. 20, 2011) ("Accordingly, for purposes of diversity jurisdiction, Wells Fargo Bank is both a citizen of South Dakota, where it has designated its main office, and California, where it has its principal place of business"); *Rouse v. Wachovia Mortgage*, FSB, No. EDCV 11-00928 DMG, 2012 U.S. Dist. LEXIS 6962 at *42 (C.D. Cal. Jan. 13, 2012) ("Wells Fargo, having its principal place of business in California and main office in South Dakota, is a citizen of both states"); *with Tse v. Wells Fargo Bank*, N.A., No. C10–4441 TEH, 2011 U.S. Dist. LEXIS 6796 at *7 (N.D. Cal. Jan.19, 2011) ("[T]he test for a national bank's citizenship under section 1348 is determined solely by the location of its main office designated in its articles of association"); *Cochran v. Wachovia Bank, N.A., et al.*, Case No. CV 10–018 CAS, 2010 U.S. Dist. LEXIS 38379 (C.D. Cal. Mar. 9, 2010) (concluding that a national bank was a citizen only of the state in which its main office is located); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp.2d 1119, 1124 (N.D. Cal. 2010) ("[T]he Court concludes that Wells Fargo is a citizen of the state in which its main office, as specified in its articles of association, is located"); *Kasramehr v. Wells Fargo Bank N.A. et al.*, CV 11–0551 GAF, 2011 U.S. Dist. LEXIS 52930 at *3 (concluding that Wells Fargo is a citizen only of the state in which it has its main office); *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of the state in which it has designated its 'main office'"). The Ninth Circuit has yet to address the issue post-*Schmidt. See Goodman*, 2011 U.S. Dist. LEXIS 63165 at *6.

After considering below in detail Defendant's arguments as to this issue, the Court would find that a national banking association is a citizen of the state of its principal place of business as well as a citizen of the state where its main office is located, and on that basis the Court should GRANT Plaintiff's Ex Parte Application to Remand the Action to State Court.

> *1. Defendant's argument that Congress did not intend the principal place of business test to apply to national banking associations because the principal place of business test did not exist when Section 1348 was enacted is unavailing.*

Defendant argues that because the principal place of business test did not apply when Congress drafted Section 1348, it could not have intended such a test to give rise to citizenship for jurisdictional purposes. However, in *Rouse v. Wachovia Mortgage*, after a lengthy dissection of *Schmidt*, the history of Section 1348 and the history of the principal place of business test, as

well as the relevant post-*Schmidt* caselaw, the Court held:

> *Schmidt* makes three things clear: (1) when interpreting the word "located" in 28 U.S.C. § 1348, courts should not look to whatever denotative meaning Congress may have had in mind in 1948 [the year Section 1348 was enacted] or even 1887 [when the statutory language first appeared], but rather should apply the word in terms of Congress' purpose; (2) Congress intended to achieve jurisdictional parity between national banks and state-chartered banks; and (3) complete parity between national and state-chartered banks requires that national banks be deemed citizens of both their main office and their principal place of business.

2012 U.S. Dist. LEXIS 6962 at *41; *see also Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 986 (7th Cir. 2001) ("[Section 1348] has been consistently interpreted by the Supreme Court to maintain jurisdictional parity between national banks and state banks or other corporations.").[2] While Defendants point out that state-chartered banks were only deemed citizens of their principal place of business beginning in 1958, after the enactment of Section 1348, the Court would decline to presume that Congress, in failing to amend Section 1348 once the parameters of state-chartered bank citizenship changed, implicitly abandoned their prior goal of achieving parity as between the citizenship rules for state- and nationally-chartered banks. *But see Kasramehr v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 52930, at *5-6.

> 2. *Schmidt* left open the possibility that the principal place of business test applies to determine national banking associations's citizenship, and *American Surety* militates in favor of our so holding.

In *Schmidt*, the main office and the principal place of business of the national bank whose citizenship was at issue was the same state. 546 U.S. at 314, n. 9. Thus, *Schmidt* did not address whether the principal place of business of a national banking association could give rise to an additional state of citizenship; the issue squarely before the court was whether a national banking association was a citizen of every state in which it has a branch. *Schmidt* did, however, address the principal place of business issue in footnote nine, and varying interpretations of that footnote have given rise to the disparate paths taken by the California District Courts as to this issue. While Defendants make a valiant effort to parse the language of the footnote such that it yields the outcome that *Schmidt* foreclosed the possibility that the principal place of business could not give rise to citizenship, the Court would find such efforts ultimately unavailing, and would join

---

[2] Defendant argues that *Firstar* was overruled by a later Seventh Circuit case, *Hicklin Eng'g L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), and thus *Rouse*, which in part relies on *Firstar*, is misguided. *See* Docket No. 11 at 6. Yet a close reading of *Hicklin* discloses that it did not, as Defendant asserts, overrule *Firstar*, and *Rouse* in fact persuasively did away with this argument in its footnote 6. *Rouse*, 2012 U.S. Dist. LEXIS 6962 at *19. The *Hicklin* court summarized *Schmidt* as holding that "national banks are citizens only of the states in which their main offices are located." *Hicklin*, 439 F.3d at 348. However, this sentence is included as part of a discussion of whether a national bank could be the citizen *of every state in which it has a branch*, and in this sentence the *Hicklin* court merely sought to show that post-*Schmidt*, that was not the case, since the main office test must be applied. *Id.* Further, as in *Schmidt*, "*Hicklin* had no reason to decide whether a national bank was also a citizen of its principal place of business." *Rouse*, 2012 U.S. Dist. LEXIS 6962 at *19, n.6.

the plethora of other cases (cited above) in finding that *Schmidt* left the matter undecided. Footnote nine states:

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. *See Horton*, 387 F.3d, at 431, and n. 26; *Firstar Bank*, N. A., 253 F.3d, at 993–994. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." **The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide**.

*Schmidt*, 546 U.S. 317 n.9 (emphasis added). Defendants interpret this language to support the notion that the Supreme Court "not only recognizes but accepts the only near-complete parity between national banks and state corporations[3]." Docket No. 11 at 5. The last sentence of the footnote, however, does not readily support Defendant's position. If the *Schmidt* Court was of the opinion that incomplete parity was sufficient to effectuate congressional intent, they would not have needed to address the absence of a "principal place of business" reference. By addressing the issue, and further by noting that the absence of such language "may be of scan practical significance," *Schmidt* left open the issue of whether the principal place of business test may be used to assess the citizenship of national banking associations.

While Defendant cites cases that support its interpretation of footnote nine, other cases support the interpretation the Court would adopt here, namely that footnote nine left open the issue of whether the principal place of business test can give rise to citizenship for national banking associations. *See, e.g., Rouse*, 2012 U.S. Dist. LEXIS 6962 at *23-24; *Goodman*, 2011 U.S. Dist. LEXIS 63165 at *5; *Saberi*, 2011 U.S. Dist. LEXIS 5286 at *4 ("[T]he approach of considering a national banking association to be a citizen of both the state in which it has designated its main office and the state where it has its principal place of business is not precluded by the holding in *Schmidt*."). Further, the only Ninth Circuit case to directly consider the citizenship of national banking associations found that the principal place of business test applies to national banking associations. *Amer. Surety. Co v. Bank of California*, 133 F.2d 160, 162 (9th Cir. 1943). While *American Surety* was decided long before the *Schmidt* decision, it

---

[3] Defendants argue at length that the Court should not apply the corporate citizenship rule to national banking associations. Docket No. 11 at 8-10. The Court would reject the notion that our holding today does any such thing; instead, as discussed, the caselaw interpreting the diversity statute *for a national banking association* supports a holding that the principal place of business test applies to determine its citizenship. That said, the Court would note that so holding does bring the treatment of national banking associations in line with that of corporations, and further that the Supreme Court expressed disapproval of any difference in citizenship tests as between corporations and national banking associations, calling such divergence "an anomolous result." *Schmidt*, 546 U.S. at 951.

was interpreting language of a predecessor statute to Section 1348 that was functionally identical, and has not been overruled. *See Rouse*, 2012 U.S. Dist. LEXIS 6962 at *17 n.5. In the absence of any subsequent binding precedent, the Court would find that *American Surety* aligns in favor of Plaintiff's position. Given that Ninth Circuit decisions are binding on district courts within this circuit unless faced with "clearly irreconcilable" Supreme Court precedent (*Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)), the Court would find that this survey of the caselaw works in favor of holding that a national banking association's principal place of business test is an additional source of citizenship.

> *3. The Supreme Court's decision in <u>Hertz</u> does not foreclose our holding that the principal place of business test applies to determine the citizenship of national banking associations.*

The Court is not swayed by Defendant's argument that the Supreme Court in *Hertz v. Friend* forecloses the interpretation of Section 1348 Plaintiff advocates here. *See* 130 S. Ct. 1181 (2010); *see also* Docket No. 11 at 6-7. In *Hertz*, the Court was primarily concerned with defining the term "principal place of business," as used for jurisdictional purposes. *Id.* at 1185 ("We seek here to resolve different interpretations that the Circuits have given this phrase.") Defendant argues, "*Hertz* stands for the broader principle that one (1) phrase in a jurisdiction statute should have only one (1) meaning." Docket No. 11 at 8. If the state where the bank is "located" is permitted to denote both the state of its main office and of its principal place of business, Defendant argues, then such an interpretation would violate the spirit of *Hertz* in that one word, "located," would mean two different things. This argument misses the mark. *Hertz* was geared towards a situation where different tests for what constituted a "principal place of business" were being applied in different circuits, leading to inconsistent results. 130 S. Ct. at 1191-92. Regardless of whether the word "locate" is interpreted to denote both main office location and principal place of business or solely the former, Plaintiff's position does not advocate multiple meanings for the word "locate," in violation of the spirit of *Hertz*. Instead, Plaintiff argues that where a national bank is "located" for purposes of Section 1348 has one meaning: the location of the main office and the location of the principal place of business.

In sum, despite adequate caselaw supporting either side of the issue, the Court finds that the most logical reading of Section 1348, as interpreted in *Schmidt* and other relevant caselaw, discloses that a national banking association's principal place of business is an additional source of citizenship for jurisdictional purposes. Accordingly, the Court should find that national banking association Wells Fargo is a citizen of California, where its principal place of business is located. As Plaintiff is a California citizen, diversity is lacking, and this Court does not have subject matter jurisdiction over the instant action.

### III. Conclusion

For the above reasons, the Court GRANTS Plaintiff's Ex Parte Application to Remand the Action to State Court. The clerk is ordered to remand this matter forthwith.

Dated: This 12th day of March, 2012.

_____
United States District Judge